# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #023

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **5th day of May, 2015**, are as follows:

**PER CURIAM**:

2013-KH-0072        STATE EX REL. HERBERT NICHOLSON v. STATE OF LOUISIANA (Parish of
                    Orleans)

                    The Department of Corrections is directed to amend relator's
                    master prison record in accord with the views expressed herein.

                    CRICHTON, J., additionally concurs and assigns reasons.

# SUPREME COURT OF LOUISIANA

## NO. 2013-KH-0072

### STATE EX REL. HERBERT NICHOLSON

### VERSUS

### STATE OF LOUISIANA

### ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
### COURT FOR THE PARISH OF ORLEANS

**PER CURIAM:**

For reasons that follow, relator's convictions and sentences for sexual battery, aggravated oral sexual battery, and attempted aggravated rape are vacated, as is the portion of the sentence for aggravated rape requiring that he undergo medroxyprogesterone acetate treatment. Relator's convictions for aggravated rape and aggravated kidnapping and corresponding life sentences without benefit of parole, probation or suspension of sentence remain undisturbed.

Relator's convictions stem from unrelated attacks on two different women in the 1990s: a 1991 attack on a victim identified as K.T.; and a 1994 attack on a victim identified as A.R. In both cases, the investigations went cold. More than a decade later, Orleans Parish law enforcement authorities began DNA testing of its voluminous stored evidence in an effort to resolve cold cases, and a Combined DNA Index System ("CODIS") search identified relator as a match for biological evidence collected in both attacks.

In 2008, the state charged relator with aggravated rape while armed with a dangerous weapon and aggravated kidnapping for the 1991 attack on K.T., and with attempted aggravated rape while armed with a dangerous weapon, aggravated oral sexual battery while armed with a dangerous weapon, sexual battery, and aggravated kidnapping

for the 1994 attack on A.R.  The court denied relator's motion to quash the indictment based on prescription and the cases proceeded to trial.

In 2010, an Orleans Parish jury convicted relator of aggravated rape and aggravated kidnapping for the 1991 attack on K.T., and convicted him of aggravated kidnapping, attempted aggravated rape, aggravated oral sexual battery, and sexual battery for the 1994 attack on A.R.. The district court sentenced him to three terms of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence, 50 years imprisonment at hard labor, 20 years imprisonment at hard labor, and 10 years imprisonment at hard labor, all to be served consecutively to one another.  The district court also sentenced relator to undergo the administration of medroxyprogesterone acetate ("chemical castration") pursuant to R.S. 14:43.6 and R.S. 15:538.

Relator appealed his convictions and sentences, and additionally filed a separate writ application seeking review of the chemical castration order.  In an opinion consolidating relator's appeal and writ application, the Fourth Circuit affirmed relator's convictions and sentences and denied his application for review of the district court's judgment ordering relator to undergo chemical castration.  State v. Nicholson, 11-0883; 11-0681(La. App. 4 Cir. 10/5/12), 103 So.3d 746.

After the delay period for filing an application for writs in this Court expired and his conviction became final, see La.C.Cr.P. art. 922(B); La.S.Ct.R. X § 5, but before the limitations period set out in La.C.Cr.P. art. 930.8 expired, relator, in a pro se capacity, filed the instant application. Because the issues it raises possess a constitutional basis relating to the prohibited ex post facto application of law, this opinion addresses those claims on their merits.  See e.g., State v. Jacobs, 504 So.2d 817, 818 n.1 (La. 1987).

The trial court erred in denying relator's motion to quash the sexual battery, aggravated oral sexual battery, and attempted aggravated rape charges.[1]  At the time

---

[1] Relator sought interlocutory writs in the court of appeal, State v. Nicholson, 10-1430 (La. App. 4 Cir.

relator committed the offenses on December 18, 1994, there existed a four-year prescriptive period for the commencement of prosecution on charges of sexual battery and aggravated oral sexual battery, which expired on December 18, 1998, and a six-year prescriptive period on a charge of attempted aggravated rape charges, which expired on December 18, 2000. La.C.Cr.P. art. 572. Although art. 572(B)(1) now provides an exception to the prescriptive period for prosecution of sex offenses in which the offender's identity is established through DNA testing, and notwithstanding the express wording of La.C.Cr.P. art. 572(B)(4), which states that the provision shall apply retroactively, the offenses in question had already prescribed roughly three years before the legislature enacted that provision in 2003. The state has conceded as much in this Court. Consequently, retroactive application of the DNA exception set forth in art. 572(B)(1) to revive the prescribed charges in relator's case violates the Ex Post Facto Clauses of the federal and state constitutions. See Stogner v. California, 539 U.S. 607, 123 S.Ct. 2446, 156 L.Ed.2d 544 (2003). Relator's convictions and sentences for sexual battery, aggravated oral sexual battery, and attempted aggravated rape are therefore vacated.

Aggravated rape and aggravated kidnapping are punishable by life imprisonment and as such are not subject to a prescriptive period per La.C.Cr.P. art. 571; consequently relator's convictions on those counts and sentences of life imprisonment at hard labor without benefit of parole, probation or suspension of sentence on each count remain undisturbed.[2] However, the portion of the court's sentence requiring that

10/13/10) and in this Court, State v. Nicholson, 10-2343 (La. 10/18/10), 46 So.3d 1287. both of which denied relief., Although the law-of-the-case doctrine generally gives conclusive effect to appellate rulings in the same case, it appears that the pretrial disposition as it relates to the prescription issue was patently erroneous and that accordingly this Court's intervention is warranted. See State v. Fontenot, 550 So.2d 179 (La. 1989) (Court's denial of pre-trial writs does not bar consideration of the merits on direct appeal).

[2] The defense also forcefully argued below, and argues here, that with respect to all of relator's convictions, the state violated relator's confrontation rights by calling expert Gina Pineda, who testified regarding DNA reports she signed as Technical Leader, and Ann Montgomery, who testified that in 2005 she served as

3

relator undergo medroxyprogesterone acetate treatment ("chemical castration") pursuant to R.S. 14:43.6 (enacted in by the legislature in 2008) is vacated. Although some remedial regulations may be applied retroactively without violating the constitution, see e.g., State ex rel. Olivieri v. State, 00-0172 at 15-16, (La. 2/21/01), 779 So.2d 735 at 744 (applying Collins v. Youngblood, 497 U.S. 37, 52, 110 S.Ct. 2715, 2724, 111 L.Ed.2d 30 (1990) to uphold retroactive application of the sexual offender registration requirements because legislative purpose of law was public safety), the chemical castration requirements of the new statute are expressly part of the punishment that a court may impose for the sex crimes enumerated in La.R.S. 14:43.6. See La.R.S. 14:43.6(B)(2) ("If the court sentences a defendant to be treated with medroxyprogesterone acetate (MPA), this treatment may not be imposed in lieu of, or reduce, any other penalty prescribed by law.") (emphasis added); see also State v. Gordon 13-0495, p. 15 (La. App. 4 Cir. 7/16/14), 146 So.3d 758, 768 ("It cannot reasonably be argued that requiring an offender to submit to pharmaceutical injections to render him impotent for the remainder of his life does not amount to punishment.") United States v. Cope, 527 F.3d 944, 955, n.5, (9th Cir. 2008) ("We have no doubt that chemical castration would, if prescribed against the will of a defendant on

---

Technical Leader for DNA operations in Orleans Parish, described the circumstances by which relator was identified as a possible suspect in the instant case through a CODIS DNA hit, the process for obtaining a confirmatory DNA analysis to verify the initial hit, and the likelihood of someone other than relator contributing the DNA obtained during the examination of the victims after the attacks. The state did not, however, call the analysts who conducted the DNA testing documented in the reports.

We agree with the court of appeal's finding that the defense waived the objection by failing to file a written demand for the analyst's testimony as required by La.R.S. 15:501. The record shows that the defense had ample actual notice of the state's intent to introduce the DNA evidence and of the state's witnesses and their qualifications, filed multiple motions to exclude the reports, and obtained continuances to seek independent analysis when the state disclosed the reports. The defense nonetheless did not request the analysts' testimony, waiting instead to object at trial on confrontation grounds with the announcement that "we have our writ written and someone at the Fourth Circuit with it ready to file it. She- it's the Defense's contention that a supervisor of the test, under U.S. v. Melendez-Diaz [557 U.S. 305, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009)] is insufficient." R. Vol. 4, Trial Day 2, p. 91. By failing to demand the analysts' presence until trial was underway, despite having sufficient notice to plan a future confrontation objection, prepare writ applications in advance of trial, and arrange for a representative to wait at the Fourth Circuit

4

supervised release, implicate a particularly significant liberty interest. . . . In fact, chemical castration may be found at the extreme end of the spectrum of intrusive medications and procedures . . ."); <u>Tran v. State</u>, 965 So.2d 226, 229 (Fla. 4th DCA 2007) ("We reject the state's contention that the MPA statute is for remedial treatment purposes, as opposed to punishment. The language of the entire statute speaks of MPA in terms of a sentence and a penalty . . . ."). Because the Ex Post Facto Clause prohibits retroactive application of new laws that increase the penalty for which the crime is punishable, <u>see</u> <u>Collins v. Youngblood</u>, <u>supra</u>, and because we find no clearly expressed legislative intent to apply this substantive change in the law retroactively, <u>see</u> La.R.S. 1:2; <u>Stelly v. Overhead Door Co. of B.R.</u>, 94-0569, pp. 6-7 (La.12/8/94), 646 So.2d 905, 911, the portion of the court's sentence requiring that relator submit to chemical castration is vacated.

The Department of Corrections is directed to amend relator's master prison record in accord with the views expressed herein.

---

with the applications during trial, the defense waived the confrontation objection.

05/05/15

SUPREME COURT OF LOUISIANA

NO. 2013-KH-0072

STATE EX REL. HERBERT NICHOLSON

VERSUS

STATE OF LOUISIANA

ON SUPERVISORY WRITS TO THE CRIMINAL DISTRICT
COURT FOR THE PARISH OF ORLEANS

CRICHTON, J., additionally concurs and assigns reasons:

While chemical castration of certain sex offenders has a remedial purpose – that of promoting public safety – there can be no doubt that it is significantly punitive. Therefore, I write separately to emphasize that the Ex Post Facto Clause mandates that the 2008 enactment not be applied retroactively to the 1991 offenses, notwithstanding that, in my view, it would otherwise be eminently reasonable and warranted based on this offender's egregious and outrageous set of crimes.